UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MURPHY EXPLORATION & PRODUCTION COMPANY – USA | CIVIL ACTION |
| VERSUS | NO: 24-2364 |
| W&T OFFSHORE, INC., et al. | SECTION: T (4) |

## ORDER AND REASONS

Before the Court is W&T Offshore, Inc., CL&F Resources LP, Kosmos Energy Gulf of Mexico Operations, LLC, and Arena Exploration LLC's ("Defendants") Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6). R. Doc. 11. For the following reasons, the motion is **GRANTED**.

## BACKGROUND[1]

This is an alleged breach of contract and open account action arising from oil and gas production on the Outer Continental Shelf off the coast of Plaquemines Parish, Louisiana. R. Doc. 1. The plaintiff is Murphy Exploration & Production Company – USA ("Plaintiff"). Plaintiff is the operator of the Medusa Spar, an offshore oil facility. R. Doc. 1 at ¶ 10. Defendants are the producers of the oil production from the Gladden Prospect. *Id.* In a document titled "Production Handling And Operating Services Agreement" ("the PHA"), Plaintiff agreed to process certain oil and gas production for Defendants from the Gladden Prospect. *Id.* at p. 1, ¶ 9; R. Doc. 18-2

---

[1] The Court accepts all the well-pled factual allegations of the complaint as true and views them in the light most favorable to the plaintiff. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007))

1

(attached copy of the PHA).[2] In exchange, Defendants would pay monthly fees. *Id.* at ¶¶ 15–19. Article 10.2 of the PHA requires Defendants to pay the minimum Processing and Handling fee of $150,000 per month "if the total of the per barrel charges and per MCF charges during any calendar month", i.e. the processed oil, are less than $150,000. R. Doc. 18-2 at p. 23. If the invoiced cost of the per-month processed oil exceeds the minimum Processing and Handling fee, Defendants' fee increases. R. Doc. 18-1 at p. 2.

However, certain fees apply regardless of the amount of oil processed ("the Minimum Fees"). These fixed fees are: the O&M Cost Allocation Fee of $400,000 per month, the above-mentioned minimum Processing and Handling fee of $150,000 per month, and 12% of the O&M Cost Allocation Fee. R. Doc. 1 at ¶¶ 16–17, 19; R. Doc. 18-2 at pp. 23–24. In the event of non-payment or late payment, monthly interest accrues. R. Doc. 18-2 at pp. 26–27. "Interest shall be paid on late payments at the annual prime rate plus 1-1/2% for the JP Morgan Chase Corporation quoted on the last working day of each month, such interest being calculated on a monthly basis for the period from the due date to the date of payment." *Id.* at p. 27.

Plaintiff maintains the PHA requires Defendants to pay these Minimum Fees each month, even if no oil was processed at the Medusa Spar. *Id.* As a result of damage from Hurricane Ida, the Medusa Spar was damaged and did not process any oil from September 2021 to January 2022. *Id.* at ¶¶ 21–24. During these five months, Plaintiff charged Defendants the Minimum Fees with interest. *Id.* at ¶ 25. Plaintiff seeks payment only for the Minimum Fees and accrued interest, and these fees are consistent for each month. *Id.* at ¶¶ 16–20. Defendants refused to pay and interest

---

[2] The Court can consider the entire PHA, R. Doc. 18-2, because it is "referred to in the plaintiff's complaint and [is] central to the [plaintiff's] claims." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

accrued. *Id.* at ¶ 26. Plaintiff maintains the failure to pay the Minimum Fees and interest violates the PHA; therefore, it sued Defendants for breach of contract and an open account under Louisiana law. *Id.* at ¶¶ 27–36.

At bar is Defendants' Motion to Dismiss for Failure to State a Claim. R. Doc. 11. However, Defendants seek only the dismissal of Plaintiff's open accounts claim. *Id.* Thus, the motion will be treated as a partial motion to dismiss. Defendants argue the open account claim should be dismissed because it is based on the same underlying breach of contract allegations: that Defendants failed to pay Plaintiff the Minimum Fees allegedly owed under the PHA. *Id.* at p. 1. Indeed, the complaint states the "refusal to pay the fees also gives rise to a claim under the open account statute of Louisiana" and that "[t]he amounts owed by [Defendants] to [Plaintiff], as Spar Operator, constitute an 'open account' under La. Rev. Stat. Ann. § 9:2781." R. Doc. 1 at ¶¶ 8, 34. While Defendants concede Plaintiff's allegations may state a claim for breach of contract, they contend there are no facts to support the existence of an open account as opposed to an ordinary contract between the parties. R. Doc. 11-1 at pp. 3–6.

In opposition, Plaintiff first distinguishes between "operating agreements" and this "production handling agreement." R. Doc. 18. It argues that, unlike Defendants' cited cases, which only concern offshore "operating agreement[s]," the PHA is a "production agreement" with ongoing but undeterminable service obligations and expectations of future dealing. *Id.* at pp. 5–8. Therefore, Plaintiff maintains, the PHA qualifies as an open account. *Id.* Plaintiff also argues the total amount owed is undetermined because it depends on how long Defendants should delay payment to Plaintiff and how much interest would accrue. *Id.* Additionally, Plaintiff argues it should be allowed to carry an open account claim in the alternative and asks for leave to amend

3

should the court grant Defendants' motion. *Id.* at pp. 8–10.

## LAW & ANALYSIS

Rule 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted." To survive a motion to dismiss under Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court's task in considering whether a plaintiff has stated a plausible claim to relief is to "determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (citing *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012)). Thus, courts must construe the allegations in the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in the plaintiff's favor. *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004) (citing *Herrmann Holdings Ltd. v. Lucent Techs., Inc.*, 302 F.3d 552, 558 (5th Cir. 2002)). A court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). A complaint need not contain detailed factual allegations, but must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678.

Defendants primarily contend that Plaintiff's open account claim under La. R.S. 9:2781

4

improperly collapses the distinction between breach of contract claims and open account claims. R. Doc. 11-1 at pp. 3–6. The Louisiana Open Account Statute defines an open account as "any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions." La. R.S. § 9:2781(D). It provides for the recovery of attorneys' fees by a plaintiff who prevails on a claim for failure to pay an open account. *Id.* § 9:2781(A). The Louisiana Supreme Court has thus cautioned that the Open Account Statute must be construed "strictly [] because the award of attorney fees is exceptional and penal in nature." *Frank L. Beier Radio, Inc. v. Black Gold Marine, Inc.*, 449 So.2d 1014, 1015–16 (La. 1984) (citations omitted).

Citing Louisiana courts, the Fifth Circuit makes clear that "[a] contract is significantly different from an open account." *Cambridge Toxicology Group, Inc. v. Exnicios*, 495 F.3d 169, 173–74 (5th Cir. 2007); *see also Tyler v. Haynes*, 1999-1921 (La. App. 3 Cir. 5/3/00), 760 So. 2d 559, 563. "A contract . . . is an agreement between two or more parties in which an offer is made by one of the parties and acceptance is made by the other party, thereby establishing a concurrence in understanding the terms." *Tyler*, 760 So. 2d at 563. In contrast, an open account "generally leaves undetermined key aspects of the obligation, such as the time period during which the services will be rendered or the total cost of the services for which a party may be liable." *Congress Square Ltd. P'ship v. Polk*, No. 10-317, 2011 WL 837144, at *5 (E.D. La. Mar. 4, 2011) (Fallon, J.). They "are considered distinct causes of action." *Cambridge Toxicology Grp.*, 495 F.3d at 173–74. Parties often dispute whether an agreement constitutes an open account *or* a breach of contract. *See, e.g.*, *Constr. Testing Labs, Inc. v. Wal-Mart Stores, Inc.*, No. CIV.A.08-0569, 2009 WL 2214678, at *2 (W.D. La. July 23, 2009).

The determination of whether an agreement falls under the open account statute often depends on "questions of an agreement's determinacy." *Wood Materials LLC v. Berkley Ins. Co.*, No. 17-10955, 2018 WL 560473, at *3 (E.D. La. Jan. 24, 2018) (Africk, J.). Louisiana courts have recognized facts that guide the determination of whether a course of a dealing qualifies as an open account: "(1) whether there were other business transactions between the parties; (2) whether a line of credit was extended by one party to the other; (3) whether there are running or current dealings; and (4) whether there are expectations of other dealings." *Phoenix Int'l Holdings, Inc. v. UH Servs. Grp., LLC*, No. CV 20-01684, 2020 WL 5749517, at *2 (E.D. La. Sept. 25, 2020) (Guidry, J.) (citing *Cambridge Toxicology Grp.*, 495 F.3d 169, 174 (5th Cir. 2007)). But these factors are not dispositive and do not supplant the plain statutory text. *Wood Materials LLC*, 2018 WL 560473, at *3 (citing *Frey Plumbing Co., Inc. v. Foster*, 996 So. 2d 969, 972 (La. 2008)). Most importantly, open accounts "generally leave[] undetermined key aspects of the obligation." *24/7 Restoration Specialists, LLC v. Young*, No. CV 22-1948, 2022 WL 17083379, at *2 (E.D. La. Nov. 18, 2022) (Africk, J.) (citing *Congress Square*, 2011 WL 837144, at *5). Standard contracts do not. With this principle in mind, the Fifth Circuit has noted that an interest rate of 18% for late payments is relevant to and supportive of the determination of an open account. *Ormet Primary Aluminum Corp. v. Ballast Techs. Inc.*, 436 F. App'x 297, 301 (5th Cir. 2011).

For purposes of this action, the Court does not find facts to support an open account claim. Plaintiff specifically disclaims the right to collect anything but the Minimum Fees and accrued interest during the five months the Medusa Spar was inoperable. *See* R. Doc. 1 at ¶¶ 16–17, 19. The PHA explicitly sets out these terms. *See* R. Doc. 18-2 at pp. 26–27. The Minimum Fees are set at a specific rate, $400,000 plus $150,000 plus 12% of the $400,000. *Id.*; *see also* R. Doc. 1 at

6

¶¶ 16–17, 19. These fees are due and payable every month as remission for certain processing services, regardless of the amount of oil processed. *See id.* The Minimum Fees do not vary, are consistently due, and are explicitly identified under the express terms of the PHA. Plaintiff also invoiced Defendants the identical Minimum Fees for the particular months at issue. *See* R. Doc. 1 at ¶ 25. Accordingly, this is not a case where Plaintiff gave Defendant a line of credit, subject to future adjustment of services, where the total cost of the Minimum Fees is undeterminable. Rather, the PHA establishes specific terms for the provision of services by Plaintiff and the subsequent renumeration by Defendants on a fixed, determinable, and specific schedule—the Minimum Fees. Such allegations indicate an "ordinary contract" reflecting "a concurrence in understanding of specific terms"—not an open account. *Congress Square*, 2011 WL 837144, at *4; *see also Shell Offshore Inc. v. Eni Petroleum US LLC*, No. CV 16-15537, 2017 WL 4812409, at *6 (E.D. La. Oct. 25, 2017) (Morgan, J.); *Turnkey Offshore Project Servs., LLC v. Morrison Energy Grp., LLC*, No. CV 20-858, 2021 WL 638120, at *3 (E.D. La. Feb. 18, 2021) (Lemelle, J.); *Phoenix*, 2020 WL 5749517, at *2.

To be sure, Plaintiffs allege the Minimum Fees are "subject to adjustment 'on an annual basis,'" and the PHA does contemplate future dealings between the parties. R. Doc. 18 at pp. 5–8. However, these allegations do not fundamentally alter this breach of contract claim. First, these PHA provisions do not apply here because Plaintiff charged Defendant the same Minimum Fees per month in each of the five months. R. Doc. 1 at ¶ 25. No annual adjustment occurred. *See id.* Even if the adjustment did apply, Article 10.4 of the PHA explicitly sets out how and when adjustment is made. R. Doc. 18-2 at p. 23. "The adjustment shall be computed in the simple average of the Oil and Gas Extraction Index and the Professional and Technical Services Index, as by

7

COPAS" and shall commence on "each April 1st." *Id.* It, too, is determinable and fixed. In short, while the PHA contemplates future dealings between the parties and an annual adjustment, "it provides for strict provisions for the parties' financial obligations" and therefore does not support an open account allegation. *See, e.g.*, *Shell Offshore Inc.*, 2017 WL 4812409, at *6.

Moreover, the mere presence of accrued interest does not make the PHA an open account. Louisiana courts have rejected Plaintiff's argument that a mere provision for payment of interest transforms a run-of-the-mill breach of contract claim into an open account—a statute which must be strictly construed. *See, e.g.*, *Akers v. Bernhard Mech. Contractors, Inc.*, 48,871 (La. App. 2 Cir. 4/16/14), 137 So. 3d 818, 831. "Such a construction is overbroad and would transform virtually every [] contract and promissory note into an open account, a result . . . not detect[ed] in the plain language of R.S. 9:2781." *Id.* The Fifth Circuit's unpublished holding in *Ormet Primary Aluminum Corp.*, 436 F. App'x 297 (2011) does not say otherwise. There, the pending interest on the plaintiff's invoiced variable services, providing unanticipated storage for a defendant's materials, supported an open account claim. *See id.* at 301. Whereas here, the only disputed fees, the Minimum Fees, do not vary and are not left "'open to future modification,' [or] . . . .ongoing debit and credit entries.'" *Wood Materials*, 2018 WL 560473, at *3 (citation omitted). They apply every month in a fixed amount, regardless of circumstances. R. Doc. 18-2 at p. 23. Also, this district has dismissed open account claims involving similar offshore service agreements. *See Turnkey Offshore*, 2021 WL 638120 at * 3 (dismissing an open account claim for offshore services because the invoiced work was set "at the rate stipulated in the work orders[.]" The rate "established specific terms for the provisions of services by plaintiff and the subsequent compensation by the defendants"); *Shell Offshore*, 2017 WL 4812409, at *6 (dismissing an open account claim

8

predicated on providing "the service of a successful completion" for an offshore campaign on credit).

Having reviewed Plaintiff's complaint and the associated materials, the Court determines an open account claim is not supportable in this action. Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss, R. Doc. 11, is **GRANTED**. Plaintiff's Open Account Claim is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana this 15th day of August 2025.

_____
GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE